*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, HITESMAN, and GASTON
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Dashawn Q. NICHOL**
Aviation Ordnanceman Third Class (E-4), U.S. Navy
Appellant

**No. 201800286**

Argued: 3 October 2019—Decided: 31 March 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Robert P. Monahan (arraignment)
Michael D. Libretto (motions)
Derek Butler (motions and trial)

Sentence adjudged 10 April 2018 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to pay grade E-1, confinement for 25 years, total forfeiture of pay and allowances, and a dishonorable discharge.

For Appellant:
*Mr. Zachary Spilman, Esq. (argued);*
*Lieutenant Clifton E. Morgan III, JAGC, USN (on brief).*

For Appellee:
*Lieutenant Kimberly Rios, JAGC, USN (argued);*
*Captain Brian L. Farrell, USMC (on brief).*

Senior Judge HITESMAN delivered the opinion of the Court, in which Chief Judge CRISFIELD and Judge GASTON joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

HITESMAN, Senior Judge:

Appellant was convicted, contrary to his pleas, of two specifications of rape and two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2012).[1]

Appellant raises seven assignments of error [AOE][2]:

I.      Whether prosecutorial misconduct prejudiced Appellant.

II.     Whether a sentence rehearing is required because of improper prosecution sentencing argument and other asserted errors.

III.    Whether it was error for the military judge to admit certain prior consistent statements.

IV.     Whether the military judge improperly admitted a victim's out-of-court statement as an excited utterance.

V.      Whether it was error for the military judge to admit evidence of the alleged victims' demeanor.

VI.     Whether the evidence is factually sufficient to support Appellant's convictions.

---

[1] The military judge dismissed one specification of sexual assault conditioned upon successful appellate review of the corresponding specification of rape against the same victim for the same sexual act.

[2] Appellant also raised, in a footnote, an additional AOE asserting the record is incomplete. We reviewed this AOE and find it to be without merit. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.R. 1987).

VII. Whether the military judge's findings instructions for the offense of sexual assault by causing bodily harm (where the sexual act itself is the bodily harm) failed to separate wrongful conduct from otherwise innocent conduct.[3]

We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's convictions arise out of three incidents involving three different women over a two-year period.

### A. Aviation Ordnanceman Airman [AOAN] DB

Appellant and AOAN DB worked together in the same work center onboard Naval Station Norfolk, Virginia. On 23 May 2015, they and Appellant's roommate went to a nearby amusement park and then returned to Appellant's apartment later in the evening. The three played video games until AOAN DB became tired and wanted to go to sleep for the night. Appellant's roommate offered her the couch, but Appellant offered to let her sleep in his bed. AOAN DB chose to sleep in Appellant's bed. She changed her clothes and got into Appellant's bed leaving the light on and the door open. Appellant entered the room twice and offered AOAN DB wine. She declined. After AOAN DB had fallen asleep, Appellant entered the room again, ripped the covers off of her, grabbed her phone from her hand as she was trying to call for help, pulled her shorts off, pried her legs open, and had sexual intercourse with her.

AOAN DB dressed and found Appellant's roommate playing video games. She demanded that he take her home. Sometime later that summer, AOAN DB told her boyfriend that Appellant had raped her.

### B. Aviation Machinist's Mate Third Class [AD3] BB

AD3 BB also worked with Appellant in the same work center onboard Naval Station Norfolk, Virginia, and she was friends with AOAN DB. On 12 June 2015, AD3 BB went to a party at another Sailor's home where she saw AOAN DB and Appellant. AD3 BB and AOAN DB later played beer pong, a

---

[3] Appellant acknowledges that in *United States v. McDonald,* our superior court recently rejected the same argument that he now presents. 78 M.J. 376, 380-81 (C.A.A.F. 2019). This AOE has no merit.

drinking game, for hours. After playing beer pong, AD3 BB hung out on the patio with Appellant and another Sailor. Appellant told AD3 BB that he had something to tell her and led her away to a secluded area behind a stairwell and away from others at the party. Appellant then kissed AD3 BB, who pushed him away and said, "No." Appellant then began to grab and hold AD3 BB, put his hand down her pants, and inserted his fingers into her vagina several times. Appellant then turned AD3 BB around so that she was in front of him and bent her over. He tried to take her shorts off, but AD3 resisted and was able to escape when Appellant released her after they heard voices nearby.

AD3 BB texted her friend, Aviation Structural Mechanic Third Class [AM3] NC, that Appellant "tried to take advantage of her."[4] She then stayed with AM3 NC the rest of the night. On the following Monday, AD3 BB told another good friend what Appellant had done to her.

## C. Ms. DR

Ms. DR, a 38-year-old civilian mother of four, met Appellant in a chemistry class at a local community college. They became friends and occasionally socialized outside of class. Ms. DR referred to Appellant as her FFB (fake f***k buddy). On 27 June 2017, Appellant and Ms. DR made plans to meet at his apartment and drink. Appellant showed Ms. DR a video of his friends under the influence of Xanax. He then showed Ms. DR a Xanax pill that he had taken from his friends. Ms. DR poured herself a vodka and pineapple juice drink and went to the bathroom. She later felt "weird," and after a second trip to the bathroom, Appellant pushed her into his bedroom. Ms. DR resisted and was able to get out of Appellant's bedroom and return to the living room. The next thing Ms. DR remembers is waking up nude the next morning on Appellant's living room couch. Ms. DR left Appellant's apartment and went to work. Ms. DR told a friend at work that she thought Appellant had "Bill Cosby'd" her, meaning that he drugged her and took advantage of her. She later sent Appellant a text message and told him that she thought he "Bill Cosby'd" her. At first, Appellant denied that anything had happened, but then he admitted that they had had sex. They continued to talk about the night for the next few days even though Ms. DR reported the sexual assault once Appellant admitted that they had had sex. On the morning of 29 June 2017, Ms. DR surreptitiously recorded a phone call with Appellant and discussed the events of the evening, including how much she drank, the

---

[4] Record at 1003.

Xanax video, the Xanax pill, and what led up to the two of them having sex. Appellant denied drugging Ms. DR and was adamant that she should get a drug test and that he would pay for it.

Additional facts necessary to resolve the AOE's raised are addressed below.

## II. DISCUSSION

### A. Prosecutorial Misconduct on Findings

Appellant raises several allegations of prosecutorial misconduct that he contends resulted in prejudicial error with respect to the findings. He avers that trial counsel committed prosecutorial misconduct throughout the findings phase of the trial: opening statement, examination of witnesses, and closing argument.[5]

Prosecutorial misconduct occurs when a prosecutor "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). In general, it is "defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger,* 295 U.S. at 88.). The conduct of the "trial counsel must be viewed within the context of the entire court-martial . . . not [just] on words in isolation." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

Improper argument is a type of prosecutorial misconduct, and we review both de novo. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citation omitted)). When properly objected to at trial, we review the military judge's ruling for abuse of discretion and any prosecutorial misconduct for prejudicial error. *Id.* (citing *Fletcher*, 62 M.J. at 179). "[When] no objection is made, we hold the appellant has forfeited his right to appeal and we review for plain error." *Id.* Plain error "requires that: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Pabelona*, 76 M.J. 9, 11

---

[5] Under a separate AOE, *infra*, Appellant also contends that trial counsel presented improper argument during the sentencing phase of the trial.

(C.A.A.F. 2017) (citation and internal quotation marks omitted). "[W]hen trial counsel's comments, taken as a whole, [are] so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone," Appellant's conviction must be reversed. *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014).

### 1. Preserved errors

Appellant argues that both trial counsel made improper arguments that prejudiced his right to a fair trial. Civilian defense counsel [CDC] raised several objections to conduct Appellant now complains of, to include arguing facts not in evidence, arguing for an improper spillover of evidence, disparaging the defense counsel, commenting on Appellant's right to not testify / remain silent, and offering obviously objectionable hearsay statements in front of the members.

#### a. Arguing facts not in evidence

While arguing that Appellant raped AOAN DB, the assistant trial counsel stated, "Nobody wants to be the victim of a sexual assault at their first command. It provides no benefit to them. In fact that harms a career."[6] CDC did not object to these comments, but did object during rebuttal argument when the trial counsel stated, "[AOAN DB] questioned herself after, she blamed herself. That's a normal feeling for a victim of rape."[7] The military judge sustained the objection, stating, "There are no facts in evidence to support that. Counsel may make arguments for reasonable inferences on facts [that] are in evidence, but I don't recall anything to support that."[8] We consider the prejudicial effect of both issues together below.

#### b. Arguing for an improper spillover

Assistant trial counsel first commented on Appellant's false statements to Ms. DR, stating that Appellant would "say or do anything to keep a third victim from coming forward to report him."[9] CDC objected on the grounds that the assistant trial counsel was arguing for an improper spillover. The military judge sustained the objection and issued a spillover instruction.

---

[6] Record [R.] at 1481.

[7] *Id.*

[8] *Id.*

[9] R. at 1497.

Assistant trial counsel later asked the members to compare the veracity of Appellant's out-of-court statements to the testimony of each victim. CDC objected twice on grounds of the improper spillover effect of that comparison. The military judge overruled the objection each time, but in response to each objection, the military judge also issued an appropriate curative instruction reminding the members that each offense must stand on its own, the burden of proof is on the Government, only the members determine the credibility of any evidence, and the argument of counsel is not evidence.

Trial counsel, during rebuttal argument, then argued that each victim was inconsistent in some part of her story to show that while people may forget things or remember things differently, that does not mean they are lying about everything or even about important facts. CDC objected, contending this argument invoked an improper spillover that would prejudice a legitimate defense to one of the other charges. The military judge overruled the objection but still issued a spillover instruction to the members.

It has long been recognized that "where criminal intent involved in two offenses is similar (although the offenses themselves are unrelated) and, significantly where the proof of one would not be admissible to prove the other, there is a serious danger that overwhelming proof of one will 'spill over' and prejudice a legitimate defense to another." *United States v. Haye*, 29 M.J. 213, 215 (C.M.A. 1989). We do not have such a case before us. Notwithstanding Appellant's argument, discussing the fact that each victim's testimony was inconsistent in some way regarding the facts of her own sexual assault is not proof of the accused's criminal intent, as discussed in *Haye*. It is merely an attempt to minimize and explain the inconsistencies in each victim's testimony as compared to the facts and prior statements regarding each victim's own assault—not the assaults of the other two victims. Moreover, pointing out the minor inconsistencies in each victim's testimony does not argue for any fact in issue, but only reflects on each victim's credibility. Except for the first instance, where the military judge found error, we find no additional error, and we find that the military judge did not abuse his discretion in overruling the second and third Defense objections.

### c. Disparaging the defense counsel

It is "improper for a trial counsel to attempt to win favor with the members by maligning defense counsel." *Fletcher*, 62 M.J. at 181 (citations omitted). Doing so detracts from the dignity of the proceedings and has the potential to turn the court-martial into "a popularity contest" with the members deciding the case, not on the facts and law of the case, but "based on which lawyer they like better." *Id.* In addition to "detract[ing] from the dignity of judicial proceedings[,]" personal attacks can "cause the [trier of

fact] to believe that the defense's characterization of the evidence should not be trusted, and, therefore, that a finding of not guilty would be in conflict with the facts of the case." *United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001). This violates the core legal standard of criminal proceedings, that the Government always bears the burden of proof to produce evidence on every element and persuade the members of guilt beyond a reasonable doubt. *See United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995); Rule for Courts-Martial [R.C.M.] 920(e)(5)(D).

Trial counsel disparaged the Defense by arguing that they introduced certain evidence "to embarrass, humiliate, and slut-shame"[10] Ms. DR. The military judge sustained CDC's objection to that statement and issued an instruction to the members "that evidence has been introduced and it should be considered by you only on the issue whether Ms. [DR] was truthful in her statement [to] the sexual assault nurse examiner about her recent sexual activity."[11] We address the prejudicial effect of the misconduct below.

### d. Additional preserved error

Appellant contends that both trial counsel attempted to admit obvious hearsay statements in front of members without a basis for their admission. During the Government's case-in-chief, assistant trial counsel called AD3 BB to testify. Assistant trial counsel used AD3 BB's previous statement to the Naval Criminal Investigative Service [NCIS] to refresh her recollection. On cross-examination, CDC referred to her previous statement to impeach AD3 BB. On re-direct examination, assistant trial counsel offered the statement into evidence in front of members. CDC objected and assistant trial counsel withdrew the offer. Trial counsel also called AO3 LR to testify about what AD3 BB told her shortly after Appellant assaulted her. AO3 LR testified on direct and cross-examination about her statement to NCIS. Then one of the members asked to see the statement and trial counsel offered it into evidence. CDC objected and assistant trial counsel conceded in an Article 39(a), UCMJ, hearing outside of the presence of members, that the Government had no legal basis to admit the statement.

Appellant now argues that the attempts to admit obvious hearsay statements constitute misconduct because trial counsel had no basis for admitting the statements. We acknowledge a certain level of apparent gamesmanship

---

[10] R. at 1545.

[11] Id.

displayed by trial counsel and assistant trial counsel in offering the obviously objectionable statements in front of members rather than asking for an Article 39(a), UCMJ, hearing to discuss offering the statements into evidence. However, regardless of the trial counsels' motives, the military judge made the correct ruling and issued an immediate instruction to the members that the statement was not admitted into evidence and that it "cannot be held against either side in this case."[12]

*2. Other error*

Appellant failed to object to other statements of trial counsel that he now challenges. He asserts that trial counsel invoked an improper spillover during opening statements, argued additional facts not in evidence, presumed Appellant to be guilty, shifted the burden to Appellant to prove his innocence, called Appellant a liar, and commented on the fact that Appellant did not testify. By not objecting at trial, Appellant forfeited these issues and we review them for plain error. After carefully reviewing the record and the pleadings of the parties, we find error in Appellant's assertion that trial counsel argued additional facts not in evidence.

While arguing in closing that Appellant raped AOAN DB, the assistant trial counsel stated, "Nobody wants to be the victim of a sexual assault at their first command. It provides no benefit to them. In fact that harms a career."[13] The Defense did not object. However, as noted above, CDC did object during rebuttal argument when trial counsel argued a similar theme with respect to AOAN DB. Upon CDC objection, the military judge sustained it and gave a curative instruction.

Arguments of counsel are not evidence. *Fletcher*, 62 M.J. at 183 (citation omitted). "[T]rial counsel [are] also prohibited from injecting into argument irrelevant matters, such as personal opinions and facts not in evidence." *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (citations omitted). *See also Davis v. Zant*, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994) (discussing that despite argument not being evidence, counsel are still not allowed to argue "material misstatements of fact."). "[A] court-martial must reach a decision based only on the facts in evidence." *Fletcher*, 62 M.J. at 183 (citation omitted). However, counsel are permitted to comment during argument "on contemporary history or matters of common knowledge . . . [of] which [people]

---

[12] R. at 1068.

[13] R. at 1481.

in general have a common fund of experience and knowledge, through data notoriously accepted by all." *Id.* (citations and internal quotation marks omitted).

Appellant avers that these comments constituted prosecutorial misconduct because they assert matters not in evidence. We agree because we find no evidence in the record to support the assistant trial counsel's assertions and the assertions go well beyond general "matters of common knowledge." *Id.*

*3. Prejudice to Appellant*

Finding some error, we now turn to evaluate the potential prejudice by examining the severity of the misconduct, the measures adopted to cure the misconduct, and the weight of the evidence supporting the conviction. *Fletcher*, 62 M.J. at 184. The third *Fletcher* factor alone may be dispositive of the issue. *United States v. Sewell*, 76 M.J. 14, 18-19 (C.A.A.F. 2017). "[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

We first look at the severity of the misconduct. In *United States v. Pabelona*, this Court found that despite prosecutorial misconduct, the severity of that misconduct was low because it was limited to the arguments of a "lengthy four day trial" and consisted of "relatively isolated comments" and "cover[ed] a small fraction of the trial." No. 201400244, 2015 CCA LEXIS 424, at *9 (N-M. Ct. Crim. App. Oct. 15, 2015) (unpub. op.), *aff'd*, 76 M.J. 9 (C.A.A.F. 2017). The circumstances in this case are similar to those in *Pabelona*. Appellant's trial lasted for seven days, and Appellant alleges 10 improper arguments and remarks during approximately two hours of combined opening statement, closing argument and rebuttal. Taken as a whole and in the context of a lengthy, contentious, and emotionally charged trial, both trial counsels' improper arguments and comments amounted to only a very small fraction of the trial. Attempting to admit clearly objectionable hearsay statements before the members, asserting facts not in evidence, and disparaging the Defense's motives and intentions were the most egregious of the trial counsels' infractions, but each act occurred only once or twice, and none supported a central theme of the Government's case. Although trial counsel's comment that the Defense was "slut shaming" Ms. DR was extremely im-

proper,[14] we find that the misconduct taken in proper context was not unduly severe.

Next, we look at whether there were any curative measures taken. Upon objection by CDC, the military judge issued a curative instruction in all but two of the objections he sustained. He also issued curative instructions on two occasions where he overruled the Defense objection. Even though he overruled the Defense objection on the basis of invoking a spillover three times, the military judge still issued the spillover curative instruction to ensure that the members understood how they could use the evidence. The military judge also sustained the Defense objection to trial counsel's "slut shaming" comment, and issued an immediate curative instruction.

When an improper argument objection is raised, the curative instructions given by the military judge are presumed to be adequate to alleviate the effect, if any, of the improper argument on the members. *See United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018) ("We presume, absent contrary indications, that the panel followed the military judge's instructions with regard to the . . . trial counsel's arguments.") (citation and internal quotation marks omitted). Although the military judge did not take any specific curative measures for trial counsel's arguing facts not in evidence during closing argument because the Defense did not object, he did issue appropriate instructions after sustaining the Defense objection on the same grounds during rebuttal argument. Additionally, the military judge issued the standard instructions to the members, to include "arguments by counsel are not evidence" and to "base the determination of the issues in the case on the evidence as you remember it and apply the law as I instruct you."[15] Finding no evidence to the contrary, we find that the members followed the military judge's instructions.

---

[14] As Judge Sparks reminds supervisors of litigators in *United States v. Voorhees*,

> the consistent flow of improper argument appeals to our Court suggests that those in supervisory positions overseeing junior judge advocates are, whether intentionally or not, condoning this type of conduct. As superior officers, these individuals should remind their subordinate judge advocates of the importance of the prosecutor's role within the military justice system and should counsel them to "seek justice, not merely to convict."

79 M.J. 5, 15 (C.A.A.F. 2019) (quoting *Fletcher*, 62 M.J. at 182).

[15] R. at 1446.

Finally, we consider the strength of the evidence against Appellant. In *United States v. Sewell*, the Court of Appeals for the Armed Forces [CAAF] found that the weight of the evidence supporting the appellant's conviction alone was strong enough to establish a lack of prejudice. 76 M.J. at 18. Here, the Government produced substantial evidence of Appellant's guilt. The evidence against Appellant included testimony by each of the three victims; a recorded telephone call between Appellant and Ms. DR a few days after she was raped; DNA analysis that confirmed Appellant had ejaculated in Ms. DR's vagina even though he told her that he used a condom; testimony that Appellant had no prior sexual or romantic interaction with any of the three victims; testimony that each victim reported Appellant's misconduct to a friend; and Appellant's own statements exhibiting consciousness of guilt.

Considering the isolated and brief nature of the trial counsels' improper comments and arguments throughout the trial coupled with the strength of the Government's case compared to Appellant's case, we find that Appellant was not prejudiced. "We presume, absent contrary indications, that the panel followed the military judge's instructions that the trial counsel's arguments were not evidence and that it must not engage in spillover when determining Appellant's guilt on each specification. *Sewell*, 76 M.J. at 19. The objections rightly made by defense counsel and the military judge's curative instructions in response give us confidence in the members' ability to understand and adhere to the military judge's instructions and to put trial counsel's comments in proper context. We have no cause to question the fairness or integrity of the trial and we are convinced that the members convicted Appellant based on the evidence alone.

## B. Request for Sentence Rehearing

Appellant next contends that a sentence rehearing is required due to trial counsel's improper sentencing argument and other errors. Appellant specifically contends that the sentence was inappropriately severe, he suffered illegal pretrial punishment, the military judge erred by not allowing Appellant to rebut a victim impact statement with a video showing victim's drug use, and he was unfairly prejudiced by trial counsel's sentencing argument.

### 1. Sentence appropriateness

Appellant contends that his sentence to 25 years of confinement and a mandatory dishonorable discharge was inappropriately severe. While he faced a maximum sentence that included life without the possibility of parole and a mandatory dishonorable discharge, trial counsel argued for only 35 years of confinement.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). The appropriateness of a sentence involves "the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). Our Court is constrained by the requirements of Article 66(c), UCMJ, that we may only affirm "the sentence, or such part or amount of the sentence" that we find "correct in law and fact" and that "on the basis of the entire record, should be approved." Our analysis requires that we consider the accused individually, and on the basis of "the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted). Appellant raped two women and sexually assaulted a third over a two-year period. He used physical force and incapacitating drugs to complete his crimes. The sentence adjudged by the panel of members is not inappropriately severe. While this Court has the unfettered discretion to modify the adjudged sentence, to do so in this case would be no more than an act of clemency. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). We find that Appellant's sentence is correct in fact and law.

### 2. Article 13 pretrial punishment

The Appellant was placed in pretrial confinement prior to his trial and continued in that status during his court martial. The military judge initially allowed Appellant to interact with his family members in attendance at his court-martial during recesses. Trial counsel then brought to the military judge's attention the statement of understanding [SOU] between the command and the pretrial confinement facility prohibiting any interaction between Appellant and his family members, to include talking and physical contact. The military judge then rescinded his previous instructions and enforced the statement of understanding.

Appellant now claims that he is entitled to a resentencing hearing because the military judge erred in denying his motion for Article 13, UCMJ, credit. We disagree, but consider whether he is entitled to any credit. Appellant contends he was unlawfully punished when the Government prohibited him from communicating and interacting with his family during recesses in the trial proceedings.

Before findings, Appellant made an oral Article 13, UCMJ, motion alleging illegal pretrial punishment. The military judge denied the motion because he found no intent by the command to punish Appellant, that the statement of understanding was not arbitrary and capricious because it applied to all pretrial confinees—not just Appellant—and it addressed security concerns that are legitimate governmental purposes.

Article 13, UCMJ, prohibits pretrial punishment: "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him[.]" The CAAF has determined that for Appellant to receive relief, he must show that the Government intended to punish him. "[T]he question of whether particular conditions amount to punishment before trial is a matter of intent, which is determined by examining the purposes served by the restriction or condition, and whether such purposes are reasonably related to a legitimate governmental objective." *Howell v. United States*, 75 M.J. 386, 393 (C.A.A.F. 2016) (quoting *United States v. Palmiter*, 20 M.J. 90 (C.M.A. 1985)) (alteration in original) (internal quotation marks omitted).

Article 13, UCMJ, prohibits: (1) punishment prior to trial; and (2) conditions of pretrial confinement that are more rigorous than necessary to ensure presence for trial. *see also United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005). The first prong requires "a purpose or intent to punish," determined by the intent of detention officials or by examining the purposes served by the restriction or condition and whether such purposes are "reasonably related to a legitimate governmental objection." *Id.* at 227 (citations omitted). The second prong requires "sufficiently egregious" circumstances that give rise to a permissive inference of punishment. *Id.*

"The burden is on [an] appellant to establish entitlement to additional sentence credit because of a violation of Article 13[, UCMJ]." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citing R.C.M. 905(c)(2)). Whether an appellant is entitled to relief for a violation of Article 13, UCMJ, is a mixed question of law and fact. *Id.* (citations omitted). "We will not overturn a military judge's findings of fact, including a finding of no intent to punish, unless they are clearly erroneous. We will review de novo the ultimate question whether [this] appellant is entitled to credit for a violation of Article 13[, UCMJ]." *Id.* (citing *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F. 2000)).

Here, Appellant presented no evidence that the command acted with punitive intent when it complied with the brig policy prohibiting those in pretrial confinement from having social interaction with anyone while around the courtroom. The military judge thus had grounds to "find that there [was no] intent to punish here."[16] The military judge also found that the "no-

---

[16] R. at 1782.

contact" conditions of the SOU were legitimately based upon security concerns and were therefore "not so excessive as to constitute punishment."[17]

The military judge's findings of fact are supported by the record, are not clearly erroneous, and his conclusions of law are correct. Accordingly, we find that Appellant is not entitled to relief under Article 13, UCMJ.

### 3. *Waiver of rebuttal video*

Appellant offered a video of AOAN DB dancing on the wing of an aircraft to rebut her victim impact statement claiming that she has become withdrawn and distant from her friends. Part of the video showed AOAN DB placing two tabs of what appeared to be LSD on her tongue. Prior to offering the video, CDC stated, "I'm not going to make reference to the drug . . . I don't necessarily need to get into the drug issue."[18] In response to a relevancy objection by trial counsel, the military judge watched the video and ruled pursuant to Mil. R. Evid. 401 and 403, that the video was relevant to rebut AOAN DB's victim impact statement asserting her mental state. However, the military judge ruled that the portion of the video depicting AOAN DB apparently ingesting illegal drugs was inadmissible. Moreover, once the military judge ruled consistent with Appellant's wishes, Appellant did not change his position and assert a desire to have the drug use portion of the video played for the members. Appellant never asked to admit that part of the video. Finally, during an objection to CDC's sentencing argument, CDC stated, "We agreed with the court . . . to take that out,"[19] referring to the part of the video showing AOAN DB apparently placing tabs of LSD on her tongue. Appellant now argues that the military judge erred by not allowing the entire video of AOAN DB partying, dancing, and taking drugs.

Waiver is a question of law this court reviews de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). While "[a] forfeiture is . . . an oversight," *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)), "a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *Id*. "Consequently, while we review forfeited issues for plain error, we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal." *United States v. Davis*, ___ M.J.

---

[17] R. at 1783.

[18] R. at 1627-28.

[19] R. at 1733.

___, No. 19-0104, 2020 CAAF LEXIS 76 at *6 (C.A.A.F. Feb. 12, 2020) (quoting *Campos*, 67 M.J. at 332).

Appellant did not even attempt to offer the drug use portion of the video into evidence. In fact, he affirmatively disavowed his desire to do so. Therefore, Appellant waived the issue, leaving this Court nothing to review on appeal.

### 4. Improper sentencing argument

Appellant argues that trial counsel's sentencing argument was so riddled with prosecutorial misconduct that a sentence rehearing must be ordered. Trial counsel's sentencing argument lasted approximately 18 minutes and is transcribed in over 12 pages. During this argument, CDC objected 10 times and was only overruled twice. The military judge sustained CDC objections to trial counsel's improper reference to life sentences, improper reference to separate sentences for each victim, reference to dates when charges were preferred, improper argument that pretrial confinement was the only thing keeping Appellant from committing additional rapes before trial, arguing facts not in evidence, improperly characterizing Appellant's offenses as some of the most egregious crimes a person can commit, and improper argument that Appellant forced the victims to testify by invoking his right to a trial.

Finding error in the arguments of the trial counsel as sustained by the military judge, we now turn to evaluate the potential prejudice by examining the severity of the misconduct, the measures adopted to cure the misconduct, and the weight of the evidence supporting the conviction. *Fletcher*, 62 M.J. at 184. The third *Fletcher* factor alone—weight of the Government's evidence—may be dispositive in favor of the Government for sentencing. *United States v. Halpin,* 71 M.J. 477, 480 (C.A.A.F. 2013). In the case of "improper sentencing argument, we consider whether trial counsel's comments, taken as whole, were so damaging that we cannot be confident that [Appellant] was sentenced on the basis of the evidence alone." *Id.* (citation and internal quotation marks omitted).

Here, even assuming the error was severe, the military judge's instructions were sufficient to cure the effect of the misconduct and the third *Fletcher* factor—weight of the Government's evidence of guilt—is clearly so dispositive that Appellant was not prejudiced as to his sentence. *Id.* The military judge issued a curative instruction after each objection raised by the CDC, even when he overruled the objection. He correctly stated the law and correctly instructed the members each time, including instructing the members on four separate occasions to disregard the argument of trial counsel. Absent evidence to the contrary, we presume the members followed these instructions. *Sewell*, 76 M.J. at 19.

Finally, the Government produced overwhelming evidence of Appellant's guilt for the specifications of which he was convicted. The evidence against Appellant included testimony by each of the three victims; a recorded telephone call between Appellant and Ms. DR a few days after she was raped discussing Xanax; DNA analysis that confirmed Appellant had ejaculated in Ms. DR's vagina even though he told her that he used a condom; testimony that Appellant had no prior sexual or romantic interaction with any of the three victims; testimony that each victim reported Appellant's misconduct to a friend; and Appellant's own statements exhibiting consciousness of guilt.

In light of the evidence against Appellant and the military judge's curative instructions upon CDC objection, we are confident that Appellant was sentenced based on the evidence and not the improper arguments of trial counsel. *Halpin*, 71 M.J. at 480.

## C. Prior Consistent Statements

Prior consistent statements are admissible if the declarant testifies, is subject to cross-examination, and the statements are offered to (1) rebut an express or implied charge that the declarant recently fabricated it, or acted from a recent improper influence, or motive in so testifying; or (2) to rehabilitate the declarant's credibility as a witness when attacked on another ground. Mil. R. Evid. 801(d)(1)(B).

We review a military judge's admission or exclusion of evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

Relevant evidence, as defined by Mil. R. Evid. 401, may be excluded by the military judge "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403. So long as the military judge conducts a proper balancing test, the ruling will not be overturned unless there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation and internal quotation marks omitted). We owe less deference to the military judge who fails to articulate a Mil. R. Evid. 403 balancing analysis on the record, and no deference will be afforded to a ruling in which the Mil. R. Evid. 403 analysis is altogether absent. *Id.*

### 1. AOAN DB's prior consistent statement is admissible

At trial, the Government offered, over Defense objection, the testimony of AOAN DB's boyfriend, who stated AOAN DB told him that "Nichol had raped her."[20] Appellant argues that AOAN DB's prior consistent statement was improperly admitted because it (1) did not precede her motive to fabricate under Mil. R. Evid. 801(d)(1)(B)(i), and (2) did not rehabilitate her credibility under Mil. R. Evid. 801(d)(1)(B)(ii). Appellant contends AOAN DB knew her boyfriend would be upset if he knew she was having sex with Appellant. Appellant avers that this was the only motive to lie that CDC argued and this motive preceded AOAN DB's statement to her boyfriend that Appellant raped her; therefore, the statement does not qualify for admission as a prior consistent statement.

Here, however, the facts are not so simple, and where "multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences." *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998). After AOAN DB testified, CDC cross-examined her and impeached her by omission for not mentioning to NCIS that Appellant's ejaculate ran down her leg after he raped her, whether she and Appellant had ever slept in the same bed before, the number of times she had visited Appellant's house, and the fact that her boyfriend would have been upset if he found out she had consensual sex with Appellant. In addition, CDC also suggested that AOAN DB's memory was influenced by trial counsel when he asked:

> Okay, now who helped you make these memories . . . so it was just yourself. So, in other words, at no time did the trial counsel say to you, "wait a minute, you know, you told NCIS that you were thinking about going to his house?"[21]

After closely examining the record, notwithstanding Appellant's argument, we find that CDC clearly implied that AOAN DB's testimony was coached or influenced by trial counsel.

The military judge admitted AOAN DB's statement to her boyfriend because there was

> testimony back and forth about recent changes in memory and recent developments in changes in her testimony after talking

---

[20] R. at 848-49.

[21] R. at 754-55.

[to] trial counsel, her [Victims' Legal Counsel] or [Appellant's roommate] or anyone else who may have given her—who may have had an impact in fabricating testimony or given her recently improper influence in her testimony. Additionally, it would be offered to rehabilitate the declarant's credibility as she did testify as a concern about flirtatious behavior or mistake of fact as to consent or that sort of thing. So, to the extent that credibility was attacked on those grounds . . . it would be proper under 801 (d)(1)(1)(b)(2) [sic] as well.[22]

While we agree with the military judge that AOAN DB's prior consistent statement could be used for some purposes under Mil. R. Evid. 801(d)(1)(B)(ii), we find it unnecessary because the prior consistent statement is clearly admissible under Mil. R. Evid. 801(d)(1)(B)(i) to rebut the implied charge that AOAN DB's testimony was recently influenced by trial counsel.

Having determined that the prior consistent statement was admissible under Mil. R. Evid. 801(d)(1)(B)(i), we next analyze whether it was properly admitted under Mil. R. Evid. 403. The military judge conducted a Mil. R. Evid. 403 balancing test with respect to AOAN DB's statement to her boyfriend, but he did not articulate his reasoning on the record.

AOAN DB's statement to her boyfriend was very brief and consisted of just a few words. It occurred in the summer of 2015, days to possibly months after she was raped. AOAN DB's boyfriend does not remember much detail other than her demeanor as she reported that Appellant raped her. In light of the Defense implication that AOAN DB had been influenced by trial counsel, the statement was significant to show that AOAN DB's report to her boyfriend had been made closer in time to the rape than her interaction with trial counsel. We find the probative weight of the statement made by AOAN DB to her boyfriend was not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence. Mil. R. Evid. 403.

AOAN DB's prior consistent statement was admissible under Mil. R. Evid. 801(d)(1)(B)(i) and the military judge did not abuse his discretion when he admitted it into evidence.

---

[22] R. at 844.

*2. Appellant waived any claim of error regarding Ms. DR's prior consistent statement*

Appellant argues that it was plain error for the military judge to admit Ms. DR's out-of-court statement to her friend at work as a prior consistent statement. We find that he waived any claim of error relating to admission of the statement.

While we review a military judge's admission or exclusion of evidence for an abuse of discretion, *Solomon*, 72 M.J. at 179 (citation omitted), when an appellant does not raise an objection to the admission of evidence during trial, this court first determines whether the appellant waived or forfeited that objection. *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (citation omitted).

On direct examination, *without* defense objection, Ms. DR testified that she told a friend at work, "I waken [sic] up on his sofa with no clothes on and that I thought—the term that I used I thought he had Bill Cosby'd me. That's what I said to her."[23] Prior to issuing his findings instructions to the members, the military judge summarized an R.C.M. 802 conference on the record, stating that the parties discussed the prior consistent statements of each victim and the proposed instructions. The military judge stated that he had initially "omitted prior consistent statements from [AOAN DB] and [Ms. DR] and I believe, Defense, you concurred that—or did not object to that being added to that section?"[24] CDC responded, "Yes, sir."[25] The military judge then explained that the three victims all made prior consistent statements and he would instruct the members regarding the statements.[26] He then asked CDC if he had any objection, and CDC responded, "No, sir."[27]

While CDC's mere failure to object during the trial counsel's direct examination of Ms. DR may constitute forfeiture that we would ordinarily review for plain error, in this case any issue regarding the admission and use of the prior statement was waived during discussion of the findings instructions. At that point, CDC had another opportunity to lodge an objection to the prior consistent statement evidence and to seek a limiting instruction on how the

---

[23] R. at 1103.

[24] R. at 1434.

[25] *Id.*

[26] R. at 1435.

[27] *Id.*

evidence may be used by the members. At the very least, that would have forced trial counsel to advocate for the evidence's admission and required the military judge to put his reasoning on the record. Instead, CDC passed on the issue for a second time. We find that CDC unequivocally waived the issue when he stated he had no objection to the prior consistent statement instruction regarding this evidence. *See Davis*, 2020 CAAF LEXIS 76 at *6 (finding that affirmatively declining to object to the military judge's instructions waives the claim).

## D. Excited Utterance

AD3 BB testified that, immediately after escaping from Appellant's grasp, she walked down the hall and texted AM3 NC that Appellant had "tried to take advantage of" her. AM3 NC testified that he observed AD3 BB "very shortly after" receiving her text. He noticed that she was "shaken up," "scared," and "different."[28]

At trial, over Defense objection, AM3 NC testified that AD3 BB told him Appellant "tried to take advantage of her and she said no." Here, as at trial, Appellant asserts this was not an excited utterance and that the military judge erroneously admitted it as such.

We review the military judge's decision to admit statements "under the excited utterance exception to the rule against hearsay" for an abuse of discretion. *United States v. Feltham*, 58 M.J. 470, 474 (C.A.A.F. 2003). The abuse of discretion standard requires "more than a mere difference of opinion"—the decision must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (citations and internal quotation marks omitted).

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused" is admissible as an exception to the general prohibition on hearsay. Mil. R. Evid. 803(2). "The implicit premise [of the exception] is that a person who reacts 'to a startling event or condition' while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990). The CAAF has adopted a three-part test to determine whether a hearsay statement qualifies as an excited utterance: "(1) the statement relates to a startling event, (2) the declarant makes the statement while under the stress of excitement caused by the startling

---

[28] R. at 1001.

event, and (3) the statement is spontaneous, excited or impulsive rather than the product of reflection and deliberation." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citations and internal quotation marks omitted).

Appellant does not assert that a sexual assault would not constitute a startling event. Nor does he dispute that AD3 BB's statement made to AM3 NC that Appellant "tried to take advantage of" her related to the sexual assault. Instead, Appellant argues that AD3 BB was not under the stress of a startling event when she sent the text to AM3 NC. Appellant places particular emphasis on the time lag between the time the text message was sent and received and the time when AM3 NC actually observed AD3 BB's demeanor. He asserts that because AM3 NC did not see AD3 BB for some indeterminate amount of time after the utterance was made, AM3 NC's testimony fails to establish a proper foundation for the excited utterance exception. We disagree.

Although "a lapse of time between the event and the utterance creates a strong presumption against admissibility," *Jones*, 30 M.J. at 128, "the lapse of any particular period of time, is not the focus of the excited utterance rule. The critical determination is whether the declarant was under the stress or excitement caused by the startling event." *Feltham*, 58 M.J. at 475 (citation omitted). "A lapse of time between a startling event and an utterance, while a factor in determining whether the declarant was under the stress of excitement caused by the event, is not dispositive of that issue." *Donaldson*, 58 M.J. at 483 (citations omitted). Likewise, we conclude that in the instance of an excited utterance conveyed via text message, a lapse of time between the transmission of the message and the receiver's observation of the declarant's demeanor, is a factor to be considered but also is not dispositive of the issue of whether the declarant was excited.

Based on the record before us, we are convinced that there was sufficient evidence for the military judge to conclude that AD3 BB was still under the stress of excitement caused by the sexual assault when she texted AM3 NC and was "very shortly" thereafter observed by AM3 NC. Her text message statement to AM3 NC—that Appellant "tried to take advantage of" her—was not the result of reflection or fabrication, and her demeanor as observed by AM3 NC soon afterward was not affected by any intervening incident. The military judge applied the proper legal test to evaluate the statement, and, after hearing and evaluating the evidence, properly determined that the facts satisfied the test. In so doing, he did not abuse his discretion in admitting AD3 BB's statement to AM3 NC as an excited utterance.

**E. Demeanor Evidence**

Appellant next asserts that the military judge erred when he admitted evidence, over Defense objection, of the victims' demeanor when they reported to friends what Appellant had done to them. Appellant argues that the demeanor evidence was not relevant and was unfairly prejudicial.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). The military judge may exclude relevant evidence after conducting a Mil. R. Evid. 403 balancing test. In this instance, there is no indication that the military judge considered Mil. R. Evid. 403 before ruling on the motion so we examine the record for ourselves.

"Lay opinion testimony is only admissible if (1) the opinion is rationally based on the witness's perception; and (2) the opinion is helpful either to an understanding of the testimony of the witness on the stand or to the determination of a fact in issue." *United States v. Lopez*, 76 M.J. 151, 156 (C.A.A.F. 2017) (citations and internal quotation marks omitted). However, "[s]o long as the opinion [of a lay witness] is based upon personal observation and is relevant, [the witness] may testify about another's emotional state. No unique ability or specialized training is required to form such opinions." *United States v. Patrick*, 78 M.J. 687, 712 (N-M. Ct. Crim. App. 2018) (quoting *United States v. Roberson*, 65 M.J. 43, 47 (C.A.A.F. 2007).

AOAN DB's boyfriend and two friends of AD3 BB provided the lay opinion testimony at issue. During an Article 39(a), UCMJ, hearing, the Defense raised a motion in limine to prevent trial counsel from eliciting the emotional state of the victims as they were reporting what Appellant had done to them. The military judge denied the motion, finding the demeanor testimony admissible and relevant as to credibility.

AOAN DB's boyfriend testified that in the summer of 2015, days to possibly months after her rape, she told him that Appellant had raped her. He described her as "broken down" and said she "could barely talk" when she told him Appellant had raped her. As discussed above, the statement itself was admitted into evidence as a prior consistent statement.

AM3 NC testified that AD3 BB texted him that Appellant "tried to take advantage of her. She said no but he was too strong." When he next saw her after a "very short amount" of time, she looked "shaken up scared." As discussed above, the statement itself was admitted into evidence as an excited utterance. Another friend of AD3 BB's also testified that AD3 BB told her about the assault on the Monday following the party and when she described what Appellant had done to her, she "seemed shocked." This statement was made without objection from CDC.

The demeanor evidence of each of the lay witnesses is relevant, probative, and admissible because it was based on their personal observation of either AOAN DB or AD3 BB; it would be helpful to the members in understanding the witness's testimony; it would be helpful to the members in assessing the credibility of AOAN DB and D3 BB; and it tended to corroborate that a traumatic event had occurred to AOAN DB and AD3 BB. While the demeanor evidence was not favorable to Appellant, we find no support in the record for the contention that the probative weight of the evidence was outweighed by any of the Mil. R. Evid. 403 factors. Accordingly, we find that the military judge did not abuse his discretion when he admitted lay opinion evidence of the victims' demeanor.

## F. Legal and Factual Sufficiency

Appellant asserts the evidence is legally and factually insufficient to support his convictions with respect to each of the three victims. Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To determine legal sufficiency, we ask whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015). In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not having observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict." *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

To support Appellant's conviction for rape with respect to AOAN DB, the Government needed to prove beyond a reasonable doubt that: (1) Appellant committed a sexual act upon AOAN DB, to wit: penetration of her vulva with his penis; and (2) that he did so by unlawful force, to wit: prying her closed legs open with his hands.

AOAN DB testified before the members describing, in detail, Appellant's conduct on the night of 23 May 2015. Appellant twice entered the room where

she was sleeping and offered AOAN DB wine, which she declined both times. Appellant then re-entered the room, pulled the blankets off of AOAN DB and got on top of her. She testified that Appellant said, "I know you want this" two times despite AOAN DB telling him to stop. She attempted to use her phone to call for help, but Appellant grabbed it out of her hand and threw it to the side of the bed. AOAN DB testified that she continued to resist and curled up in the fetal position but Appellant pried her legs open and inserted his penis into her vagina. She attempted to call for Appellant's roommate but he was playing video games in a different room. When Appellant had finished, he tossed her to the side and she got up and left. She found Appellant's roommate and demanded that he take her home. Later that summer, AOAN DB told her boyfriend that Appellant raped her. Her boyfriend described her as "broken down" and stated that she "could barely talk" while describing the rape. Appellant's roommate also confirmed that he had headphones on while playing video games and did not hear anything related to the rape. He also confirmed that he took AOAN DB home later that night after she found him playing video games.

To support a conviction for sexually assaulting AD3 BB, the Government was required to prove beyond a reasonable doubt that: (1) Appellant committed a sexual act upon AD3 BB; and (2) that he did so by causing bodily harm, to wit: penetration of her vulva with his finger without her consent.

AD3 BB testified before the members describing Appellant's assault on her at the party on 12 June 2015. She testified that she had rebuffed Appellant's advances at work and that they had no prior romantic or sexual encounters. At the party, Appellant asked to speak to AD3 BB alone and led her to a secluded spot behind a stairwell. Appellant then attempted to kiss AD3 BB, put his hand in her pants, and tried to remove them. Appellant was able to penetrate AD3 BB's vagina with his fingers several times. AD3 BB said, "No" repeatedly and attempted to resist finally getting free when Appellant stopped because he heard voices nearby. AD3 BB immediately texted her friend, AM3 NC who was also at the party, that Appellant had "tried to take advantage of her . . . she said no but he was too strong."[29] AM3 NC testified that within a short period of time after receiving the text, he saw AD3 BB and noticed that she was "different . . . almost shaken up, scared."[30] Appellant's roommate also testified that Appellant appeared "frantic" and "shook" at the party and told him: "Bro, you are not going to believe this. [AD3 BB]

[29] R. at 1003.

[30] R. at 1001.

grabbed my hand and put it down her pants and said you are going to catch a SAPR case."[31] The Government called AD3 BB's good friend to testify that AD3 BB reported the details of her assault to her on the Monday following the party.

To support Appellant's conviction for rape with respect to Ms. DR, the Government needed to prove beyond a reasonable doubt that: (1) Appellant committed a sexual act upon Ms. DR by causing penetration of her vulva with his penis; (2) that he did so by administering to her, without her knowledge or permission, a drug; and (3) he thereby substantially impaired her ability to appraise and control her conduct.

Ms. DR testified before the members, explaining the circumstances surrounding the evening on which Appellant raped her. She described how Appellant showed her a video of his friends who were high on Xanax and then showed her a Xanax pill. Ms. DR explained that after she went to the bathroom, she returned to her drink and then began to feel "weird," like she was "floating," and then everything was spinning. She testified that she never experienced these symptoms with alcohol before. Ms. DR testified that she exchanged text messages with Appellant the following day and he denied that anything happened. Later that day, Ms. DR and Appellant talked on a video call where Appellant initially denied having sex but later admitted that they had sex but that he used a condom. Ms. DR then reported the sexual assault the Virginia Beach Police Department. A telephone call between Appellant and Ms. DR was recorded within days after the rape and was played for the members. During this recording, Ms. DR confronted Appellant about the video of his friends intoxicated on Xanax and showing her the Xanax pill. Appellant explained what happened and what led to the two of them having sex. He stated that he used a condom but DNA evidence later showed that was a lie, demonstrating his consciousness of guilt. Finally, a toxicologist testified to explain why Xanax might not have been detectable in Ms. DR's urine by the time she was tested.

Ms. DR did have significant loss of memory on the night she was raped. As Appellant argues, there is no direct evidence of Xanax in her system and no Xanax was found in the possession of Appellant. While these facts do make this issue a much closer call, the members heard those same arguments and weighed the same circumstantial evidence and drew the inference that Ms. DR was drugged by Appellant before he had sex with her. In addition,

---

[31] R. at 1034.

during the recorded telephone call, Appellant does not deny or dispute that he showed Ms. DR the video of his friends high on Xanax and showed her the Xanax pill. This corroborates Ms. DR's testimony that Appellant had Xanax; he had the opportunity to put it in her drink; she later felt "weird" like she was "floating" and everything was "spinning;" and the next thing she remembered was waking up in the morning, disoriented and naked on the couch. Moreover, after Ms. DR confronts Appellant regarding the Xanax video and she accuses him of drugging her, Appellant offers to pay for a drug test and suggests she be tested for several drugs, but does not suggest Xanax.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are persuaded that a reasonable fact-finder could have found all the essential elements required to convict Appellant beyond a reasonable doubt of rape of AOAN DB, sexual assault of AD3 BB, and rape of Ms. DR. Furthermore, after weighing the evidence in the record of trial and recognizing that we did not personally see the witnesses' testimony, we too are convinced beyond a reasonable doubt of Appellant's guilt.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact and no error materially prejudicial to Appellant's substantial rights occurred. Arts. 59, 66, UCMJ. The findings and sentence are **AFFIRMED**.

Chief Judge CRISFIELD and Judge GASTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court