**UNITED STATES, Appellee,**

v.

**Thomas W. JONES, Sergeant, U.S. Air Force, Appellant.**

No. 61,700.
ACM 25547.

U.S. Court of Military Appeals.

May 10, 1990.

---

For Appellant: *Captain Ronald A. Gregory* (argued); *Colonel Richard F. O'Hair* and *Captain Laurence M. Soybel.*

For Appellee: *Captain Leonard R. Rippey* (argued); *Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie.*

*Opinion of the Court*

EVERETT, Chief Judge:

Jones was convicted in 1986 of the unpremeditated murder of his 9–month–old son, Christopher, by shaking him to death, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918, and was sentenced to a dishonorable discharge, 20 years' confinement, total forfeitures, and reduction to airman basic. The Court of Military Review set aside the findings and sentence because of prejudicial error committed by receiving evidence of other misconduct in violation of Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984. 25 MJ 567 (1987).

At the rehearing Jones pleaded guilty to involuntary manslaughter by culpable negligence, in violation of Article 119, UCMJ, 10 USC § 919. The Government again sought to prove him guilty of murder but was unsuccessful. The military judge found him guilty of involuntary manslaughter while perpetrating a battery. The sentence adjudged was a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. After the convening authority approved the sentence and the Court of Military Review affirmed the findings and sentence in an unpublished opinion, we granted review on this issue raised by appellant:

> WHETHER THE MILITARY JUDGE ERRED BY PERMITTING SERGEANT ANDREWS TO RELATE A HEARSAY STATEMENT MADE BY MRS. JONES.

I

■ At the rehearing, Sergeant Andrews testified for the Government that for about a year he had been appellant's neighbor and that his wife often had served as a baby-sitter for Christopher. One evening in January 1985—some 8 months before the homicide—Mrs. Andrews had been baby-sitting for Christopher; and, when Mrs. Jones arrived at the Andrews' home to pick up her infant son, "she was crying and she appeared to be nervous." Mrs. Jones had "gathered [up] Christopher's belongings"; and Sergeant Andrews "volunteered to carry a swing over to her residence." When they arrived there, he "sat the swing down in the kitchen, and she laid Christopher on the cabinet and was playing with him and all of a sudden, she started to cry." Thereupon, Andrews "asked her what was wrong."

Over a defense "hearsay" objection, the military judge ruled that her answer to the inquiry by Sergeant Andrews was "akin to an excited utterance; his testimony was that she was visibly upset, tearful, et cetera." Thereafter, Andrews testified that Mrs. Jones had stated that her husband "got mad this morning and tried to destroy everything of Christopher's because he was jealous." Then he said that "[s]he went on to say that" appellant "had grown to be very jealous of Christopher during the month of January." Receipt of this evidence raises the issue under review.

II

The 1951 and 1969 Manuals for Courts–Martial recognized a hearsay exception for a "spontaneous exclamation." *See* para. 142*b*, Manual for Courts–Martial, United States, 1951, and Manual for Courts–Martial, United States, 1969 (Revised edition); and *United States v. Sandoval*, 18 MJ 55, 62 (CMA 1984). As explained in the 1969 Manual:

> An utterance concerning the circumstances of a startling event made by a person while he was in such a condition of excitement, shock, or surprise, caused by his participation in or observation of the event, as to warrant a reasonable inference that he made the utterance as an impulsive and instinctive outcome of the event, and not as a result of deliberation or design, is admissible as an exception to the hearsay rule to prove the truth of the matters stated. Such a spontaneous exclamation may be proved by any competent evidence, and the testimony of a person who heard the utterance being made, but who was not

present at the occurrence which gave rise to it, is competent for this purpose. However, "[a]n exclamation is not admissible as a spontaneous exclamation unless independent evidence of the startling event which gave rise to it and of an opportunity on the part of its maker to observe the event is introduced." *Id.*

Mil.R.Evid. 803(2), Manual for Courts-Martial, United States, 1984, recognizes a similar hearsay exception, which it terms "excited utterance" and defines as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The language of this Rule seems less stringent than that of its predecessor—which required the statement to be made almost immediately after the event prompting it and as a result of impulse and instinct. Moreover, unlike paragraph 142b of the 1969 Manual, Mil.R.Evid. 803(2) contains no express requirement for "independent evidence of the startling event which gave rise to" the utterance.*

Despite its seeming relaxation of the hearsay prohibition, the rationale for Mil.R. Evid. 803(2) is much the same as that which undergirded paragraph 142b of the earlier Manuals. The implicit premise is that a person who reacts "to a startling event or condition" while "under the stress of excitement caused" thereby will speak truthfully because of a lack of opportunity to fabricate. Therefore, even though the utterance need not always follow immediately after the event, a lapse of time between the event and the utterance creates a strong presumption against admissibility.

Clearly the kind of statement by Mrs. Jones under circumstances like this case would not have qualified for admission as a "spontaneous exclamation" or as a "fresh complaint" (in the context of a sex offense) under paragraphs 142b or 142c of the 1951

and 1969 Manuals. *United States v. Sandoval, supra.* We are convinced that it should fare no better under Mil.R.Evid. 803(2).

In *United States v. LeMere*, 22 MJ 61, 67–68 (CMA 1986), we held that the challenged hearsay statement was inadmissible under Mil.R.Evid. 803(2) because, in part, there was not a close enough nexus between the statement and the event which allegedly had prompted it. In *United States v. Arnold*, 25 MJ 129, 132 (CMA 1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988), where a statement by a child had been admitted as an "excited utterance" pursuant to Mil.R.Evid. 803(2), the overnight delay between the alleged event and the utterance led to disagreement in this Court as to whether the requirements of Mil.R.Evid. 803(2) had been met. This disagreement, however, concerned only whether, under the particular facts, the declarant, who was a child, would still have been "under the stress of excitement caused by the event."

In the present case, the remarks by Mrs. Jones do not meet the requirements of *LeMere* or *Arnold*. They were offered by the Government as having resulted from appellant's attempted destruction of his son's belongings some 12 hours earlier. During this period of time, Mrs. Jones had gone about her daily business. Apparently there had been an earlier opportunity for her to talk to Sergeant Andrews and his wife when she had left Christopher at their home; but she had made no comment at that time about any problem.

Unlike the child declarant in *United States v. Arnold, supra*, who might have tended to remain excited because of a startling event, Mrs. Jones was an adult. Moreover, instead of being the product of impulse or instinct, her utterance was in response to a question by Sergeant An-

---

* The Drafters' Analysis of the "excited utterance" hearsay exception in Mil.R.Evid. 803(2) states that it "is taken from the Federal Rule verbatim. Although similar to paragraph 142b of the present Manual with respect to spontaneous exclamations, the Rule would appear to be more lenient as it does not seem to require indepen-

dent evidence that the startling event occurred. An examination of the Federal Rules of Evidence Advisory Committee Note indicates some uncertainty, however. S. SALTZBURG & K. REDDEN, FEDERAL RULES OF EVIDENCE MANUAL 540 (2d ed. 1977)." Manual for Courts-Martial, United States, 1984 at A22–43.

drews, who was concerned about her emotional state.

According to Sergeant Andrews' testimony on direct examination, Mrs. Jones had not told him which of Christopher's things her husband had tried to destroy. Thus, we know little about the nature of the "startling event or condition" which led to her statement. Indeed, what we do know seems to be derived solely from the utterance itself.

The remark by Mrs. Jones that her husband "had grown to be very jealous of Christopher during the month of January" also was not shown to have been directly related to any "startling event or condition." Indeed, it presented her opinion as to an attitude which had gradually developed in response to the presence of an infant son. Even though Mrs. Jones may have been "excited" about her husband's actions and attitudes, her comments to Sergeant Andrews did not fulfill the requirements of Mil.R.Evid. 803(2); and, as such, the defense objection should have been sustained.

### III

If Jones had been convicted of murder, we might readily discern that some prejudice resulted from the military judge's error in admitting his wife's statement. Her hearsay statement might have been construed by the factfinder to have shown that her husband intended to kill or to do great bodily harm to Christopher. Since appellant's pleas of guilty to involuntary manslaughter were based on a theory different from that which formed the basis for his conviction, prejudice is still an issue as to the new theory, though it is more difficult to locate.

The guilty pleas were to the lesser-included offense of involuntary manslaughter "by culpable negligence." However, the military judge found appellant guilty of involuntary manslaughter "while perpetrating an offense directly affecting the person of Christopher Ray Jones, to wit: a battery." The military judge explained his findings in this way:

I don't buy your culpable negligence story for a minute; however, the court's simply not convinced beyond a reasonable doubt that you intended to kill or inflict grievous bodily injury on your son. However, the court is convinced beyond a reasonable doubt that you perpetrated an outrageous assault and battery on your son which resulted in his death.

The defense contends that, if the military judge had not received in evidence the utterance by Mrs. Jones, he would probably have found Jones guilty of involuntary manslaughter exactly in line with his pleas —namely, involuntary manslaughter "by culpable negligence." According to the defense, in that event the judge probably would have adjudged a lighter sentence than the one predicated on the findings he rendered.

According to Article 119, involuntary manslaughter is a homicide, "without an intent to kill or inflict great bodily harm," committed either "by culpable negligence" or "while perpetrating or attempting to perpetrate an offense—other than" burglary, sodomy, rape, robbery, or aggravated arson—"directly affecting the person." Assault and battery are offenses "directly affecting the person." *United States v. Irvin*, 13 MJ 749 (AFCMR 1982), *aff'd in part*, 22 MJ 342 (CMA), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). *See* para. 44c(2)(b), Part IV, 1984 Manual, *supra*.

An assault may be of two kinds: an "attempt" type, which "requires a specific intent to inflict bodily harm"; and an "offer" type, where there "is an unlawful demonstration of violence, either by an intentional or *by a culpably negligent act or omission*, which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm." In the latter instance, "[s]pecific intent to inflict bodily harm is not required." Para. 54c(1)(b)(i) and (ii), Part IV, 1984 Manual, *supra* (emphasis added). "A 'battery' is an assault in which the attempt or offer to do

bodily harm is consummated by the infliction of that harm." Para. 54c(2)(a).

Although appellant's plea was couched in terms of "culpable negligence," the plea and the ensuing providence inquiry made clear that Jones conceded that he had committed an assault and battery on Christopher. The circumstance that the battery followed an "offer" type assault resulting from "culpable negligence"—rather than an "attempt" type assault requiring "specific intent"—is immaterial. In either event, Jones committed involuntary manslaughter, and the maximum punishment was the same. Under these circumstances, the findings of guilty can be properly affirmed. *See United States v. Epps*, 25 MJ 319 (CMA 1987), and cases discussed therein.

We also have considered the possibility that the military judge might have adjudged a lesser sentence if the comment by Mrs. Jones had not been received in evidence. However, on the record here we conclude that this possibility is too remote to require remedial action.

## IV

The decision of the United States Air Force Court of Military Review is affirmed.

COX, Judge (concurring):

I agree that the statement made to Sergeant Andrews is not admissible under Mil. R.Evid. 803(2), Manual for Courts–Martial, United States, 1984, as an "excited utterance." I write because I am concerned that we, the Bench and Bar, often resort to incantations of rules of evidence and overlook the broader perspective of proof of facts. In this regard, this case is somewhat akin to *United States v. Arnold*, 25 MJ 129 (CMA 1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988), where I was able to conclude in my mind

that the declarant's statement was admissible because

> the facts and circumstances of ... [the] case [showed] that the *girl's unsolicited, spontaneous statements to her school counselor at the first available opportunity* while she was "very, very agitated" were indeed "excited utterances."

*Id.* at 132 (footnote omitted).

This case and the *Arnold* case seem to demonstrate the frustration that litigants, judges, lawyers, philosophers, and laymen have with the law.[1] Why isn't this unsolicited, spontaneous, emotional, probative outburst admissible? In my judgment, it might have been, *but* it was not litigated in the broader perspective.[2]

There is, however, another possible basis for admission of the statement. Mil.R. Evid. 803(24) provides an exception to the rule against hearsay for

> [a] statement not specifically covered by any of the foregoing exceptions but having *equivalent circumstantial guarantees of trustworthiness,* if the court determines (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence.[3]

(Emphasis added.)

Like all hearsay exceptions, this is a rule of reliability, truthfulness, trustworthiness, and accuracy. *E.g., United States v. Dill,* 24 MJ 386, 387 (CMA 1987). It is nothing more and nothing less. In my view, Sergeant Andrews' testimony would probably have been admissible under this rule had it been offered on this basis.

---

1. "If the law supposes that ... the law is a ass—a idiot." C. Dickens, *Oliver Twist,* ch. 51.

2. Of course, the constitutional prerequisites of confrontation would also have to be satisfied. *See United States v. Hines,* 23 MJ 125 (CMA 1986).

3. There are technical requirements to this rule, including notice, which have not been complied with by the Government. Thus, we could not save the statement at this late date. Besides, the Government never relied on this rule.

I test this case with the following scenario:

The accused's wife comes home from work and goes to her baby-sitter to get her infant son. The baby-sitter's husband accompanies her to her home to help carry some of the baby's belongings. Suddenly, without provocation or questioning, she bursts into tears. The baby-sitter's husband asks, "What is wrong with you?"

She answers either:

(1) "My husband is jealous of the baby; he destroyed all of his toys this morning. I am afraid!"; or

(2) "My husband is so wonderful; he adores the baby. Look at all of the toys he gave him this morning!"

The accused is charged with murdering his own baby. At his trial, the Government offers his wife's first answer as evidence of the accused's state of mind—his rage, intent, and malice toward the child. The accused offers the second answer to show his lack of malice, his gentle state of mind, his loving intent.

Does either statement come into evidence?

Do any exceptions to the hearsay rule apply?

Mil.R.Evid. 803(1) permits receipt of present-sense impressions: "A statement describing or explaining an event or condition made while declarant was perceiving the event or condition or immediately thereafter." By its terms, this exception does not fit since the event took place many hours before the declarant made her statement.

Mil.R.Evid. 803(2) covers excited utterances: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Might the declarant still have been "under the stress of ... the event"? Many hours had elapsed since the event, but *something* triggered an emotional response. Under the facts we can only speculate, and that is the antithesis of reliability. Such facts do not easily fit this exception.

Mil.R.Evid. 803(3) covers then existing mental, emotional, or physical condition. This exception does not exactly fit because it relates to a statement of the declarant's own state of mind, not to the state of mind of the accused.

Mil.R.Evid. 803(4) covers statements made for purposes of medical diagnosis or treatment. This is a highly technical rule, but the basic premise upon which it is founded is that persons who need help from professionals are likely to tell them the truth in order to get that help. However, it may well be that one who spontaneously turns to a friend for help is just as likely to be truthful in order to get the help he or she needs.

None of these rules quite fits, but all of them arise out of the same basic underlying premise: that certain events or conditions trigger reliable, truthful declarations, which are fundamentally trustworthy, fundamentally reliable.

For purposes of Mil.R.Evid. 803(24), therefore, the question is whether the spontaneous, unsolicited statements of the wife enjoy the same degree of reliability and trustworthiness as the foregoing exceptions, such that the declaration had the "equivalent circumstantial guarantees of trustworthiness" and reliability.

What were the factors supporting reliability?

First, the statements were obviously triggered by emotion. Presumably, the declarant was still under the stress of a startling event *directed against her 1–month–old baby.*

Second, *the statement was made 8 months before the baby's death.* She would have to have been clairvoyant indeed to know appellant would later be charged with murder! Thus, her motive to fabricate or dissemble about the earlier incident seems slight. *Cf. United States v. Williamson,* 26 MJ 115 (CMA 1988).

Third, the declarations were not made to police officers seeking a statement, but

rather were spontaneously made to a neighbor.

Fourth, although the accused may not have witnessed the declaration, he does know if it was true or false, and he could offer evidence or testimony *in camera* to prove or disprove the reliability of the statement, assuming the prosecution had first laid a prima facie foundation.

Lastly, what is good for the goose is likewise good for the gander. I would not deny an accused the opportunity to prove lack of malice any more than I would preclude the Government from proving the opposite.

On a proper record, I could have sustained the admission of the wife's spontaneous declarations to prove the accused's state of mind toward the infant child. *Cf.* *United States v. Elliott,* 23 MJ 1 (CMA 1986). It was probative—arguably more probative than any other evidence in this trial—and the general purposes of the rules would have been served by its admission.

SULLIVAN, Judge (concurring):

*United States v. Arnold,* 25 MJ 129 (CMA 1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988), was a three-judge opinion. My concurring-in-the-result opinion in *Arnold* was based in part on the fact that a continuous threat of being shot existed for the child victim. I join my Brother, the Chief Judge, in the present case because this fact is not present.