# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Cadet SHELDON D. JOHNSON**
United States Army, Appellant

ARMY 20180527

Headquarters, United States Military Academy
Teresa L. Raymond, Military Judge
Colonel Erik L. Christiansen, Staff Judge Advocate

For Appellant: Captain Rachele A. Adkins, JA; Daniel S. Conway, Esquire (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jonathan S. Reiner, JA; Captain Christopher T. Leighton, JA (on brief).

23 July 2020

------------------------------
MEMORANDUM OPINION
------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Appellant asserts the military judge erred in admitting the victim's statement that appellant sexually assaulted her as an excited utterance.[1] Although we agree the statement was not an excited utterance, we find no prejudice.[2]

---

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920. The military judge sentenced appellant to two years of confinement and a dismissal. The convening authority approved the findings and sentence as adjudged.

(continued . . .)

## BACKGROUND

Appellant and the victim, Cadet (CDT) TN, met at the United States Military Academy at West Point and became close friends, but were never romantic. One night, CDT TN texted appellant that he could come to her barracks room. Appellant had previously visited CDT TN's room on many occasions.

Appellant entered CDT TN's room and went directly to lay on her bed. Cadet TN asked appellant to move over so she could get in bed and go to sleep. As she laid down next to appellant, she could smell alcohol on his breath. Appellant started playfully poking CDT TN's stomach. She told him to stop and go to sleep. Appellant started rubbing CDT TN's thighs, butt, and the side of her breast. Cadet TN continued to tell him to stop. Appellant replied, "[j]ust pretend you're dreaming." As appellant moved his hand down her shorts, CDT TN testified that her body felt frozen and that her mouth felt dry preventing her from speaking. Appellant then penetrated CDT TN's vagina with his finger, tongue, and penis.

After appellant finished, CDT TN got up, grabbed her phone, and had the following text exchange with a friend, Second Lieutenant (LT) CB:[3]

> CDT TN: [LT CB] I'm freaking out like no shit.
> LT CB: Where are you?
> CDT TN: My room, I think I'm going to leave[.] I need to leave[.]
> LT CB: What? What is your room number?
> CDT TN: I'm going to leave[.]
> LT CB: Where you at?
> CDT TN: No you can't come here, I need to go[.]
> LT CB: Go where? Yes [I'm] here[.]
> CDT TN: Where is your room?

---

(. . . continued)

[2] We have given full and fair consideration to appellant's other assigned error, claiming that the evidence is legally and factually insufficient, and find it merits neither discussion nor relief.

[3] At the time of the offense, LT CB was a cadet.

Cadet TN then took a shower. A video captured CDT TN in the hallway entering and leaving the bathroom. In both videos CDT TN appears calm and composed. After showering, CDT TN went to her friend's, LT CB's, barracks room. Lieutenant CB was not there when she arrived, so CDT TN waited in the room with his roommate, LT GC.[4] Cadet TN testified that she was crying, "very distraught" and "very confused." When LT CB returned to the room, approximately thirty minutes later, CDT TN stated to LT CB and LT GC that appellant sexually assaulted her. The government introduced CDT TN's statement through both LT GC and LT CB. Defense counsel only objected during LT GC's testimony on the basis of hearsay. Initially, the military judge sustained the objection and stated the following, directed at trial counsel:

> In order to hit the excited utterance, you've got to prove that [CDT TN was] still under the tension and excitement of the situation. So, check and see after, because [LT GC] has said that there's [thirty] minutes at least that he sat there with her, what is her demeanor, what is the [sic] how does she seem, has she gotten better, or is she still kind of excited, what is the situation[?]

Trial counsel continued to ask foundational questions of LT GC. Lieutenant GC testified that when CDT TN first entered the room, she appeared "very confused," "shocked," "upset," and "crying." Approximately thirty minutes after she entered the room, when LT CB arrived, LT GC testified that CDT TN was "still distressed," "very retracted," "and not very talkative." Trial counsel then elicited CDT TN's statement from LT GC. The military judge overruled the defense objection without providing any factual findings or statements of law.

## LAW AND DISCUSSION

*A. Admissibility of Cadet TN's Statement under the Excited Utterance Exception*

Appellant asserts the military judge erred in admitting CDT TN's statement to LT GC as an excited utterance.[5] We review a military judge's decision to admit or

---

[4] At the time of the offense, LT GC was a cadet.

[5] It is unclear whether appellant also claims on appeal the military judge erred in admitting CDT TN's statement to LT CB as an excited utterance. Defense counsel did not object to this testimony at trial. Nevertheless, we considered this issue and find it does not rise to the level of plain error. *See United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019) (explaining that, where non-constitutional error is

(continued . . .)

3

exclude evidence for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003). However, we afford military judges less deference if they fail to articulate the basis for their evidentiary ruling on the record, as the military judge failed to do in this case. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). For non-constitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings. *McCollum*, 58 M.J. at 342.

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is admissible as an exception to the general prohibition on hearsay. Military Rule of Evidence [Mil. R. Evid.] 803(2). "The implicit premise [of the exception] is that a person who reacts 'to a startling event or condition' while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990). In order for a hearsay statement to qualify as an excited utterance it must satisfy the following three-prong test: (1) the statement must be "spontaneous, excited or impulsive rather than the product of reflection and deliberation;" (2) the event prompting the utterance must be "startling;" and (3) the declarant must be "under the stress of excitement caused by the event." *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987) (citations omitted).

In appellant's case, and affording the military judge little deference due to her failure to articulate the factual and legal basis of her ruling on the record, we find the military judge erred in applying the law regarding the first prong of the *Arnold* test. As we explain below, we find CDT TN's statement to LT GC was not spontaneous, excited, or impulsive for five reasons. First, CDT TN reflected on the sexual assault while showering. Second, she decided to tell a friend, LT CB. Third, CDT TN continued to reflect on the sexual assault while waiting at least thirty minutes in her friend's barracks room prior to telling him what happened. Fourth, CDT TN's statement was in response to a specific question from LT CB. Finally, CDT TN's statement to LT GC and LT CB is unreliable because it is inconsistent with her in-court testimony.

---

(. . . continued)
forfeited, it must amount to clear, obvious error, and there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different) (citing *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016)).

Immediately after the sexual assault, CDT TN texted LT CB to see if she could come to his barracks room. Cadet TN then went to take a shower. While showering, CDT TN testified that she felt "the emotion coming." She explained that she felt "kind of empty and betrayed," and she "couldn't see how someone she thought who was, like, my brother and that I had so much respect for could do something like that to me." Cadet TN's testimony indicates she immediately began reflecting upon what happened. This period of reflection diminished the trustworthiness of CDT TN's later statement to LT GC. *See United States v. Keatts*, 20 M.J. 960, 963 (A.C.M.R. 1985) (noting that a declarant's inability to "reflect and shade the truth" is key to the excited utterance rule).

After reflecting in the shower, CDT TN went to LT CB's room. Cadet TN testified that she sought out LT CB because she trusted him and felt he could help her. In other words, CDT TN decided to tell LT CB that appellant sexually assaulted her prior to arriving at LT CB's barracks room. Thus, according to CDT TN's own testimony, her statement to LT CB and LT GC was not spontaneous.

Cadet TN's statement continued to lose spontaneity once she arrived at LT CB's barracks room and waited for him for approximately thirty minutes with LT GC. There is a strong presumption against admitting a statement as an excited utterance when it is not made immediately after the startling event. *Jones*, 30 M.J. at 129. However, case law has not delineated a specific period of time; instead, "[t]he critical determination is whether the declarant was under the stress of or excitement caused by the startling event." *United States v. Feltham*, 58 M.J. 470, 475 (C.A.A.F. 2003) (citing *United States v. Lemere*, 22 M.J. 61, 68 (C.M.A. 1986). In appellant's case, by the time CDT TN spoke to LT CB and LT GC, she was no longer under the stress of or excitement caused by the sexual assault. Although CDT TN was upset, her upset state was not a result of the event itself, but rather a result of her reflection and processing of the event.[6]

When LT CB entered the room, he and LT GC went into the hallway to have a discussion. When they returned, they both sat with CDT TN and asked her "what was going on?" Lieutenant GC testified CDT TN stated she saw appellant in the hallway and he had been drinking. She tried to get him to return to his room however, they ended up in her room. "Eventually, they were both in her room . . . .

---

[6] As we find CDT TN's statement does not satisfy the first *Arnold* prong, we need not determine whether it met the third prong requiring the declarant be under the stress of excitement caused by the event at the time the statement is made. Nevertheless, we note that given CDT TN's testimony regarding her reflection and decision to seek out LT CB, we would also find the third prong is not satisfied.

[CDT TN] continued trying to get [appellant] to not be there, to go, and then she said she tried to fight, and she said she stopped trying to fight because it hurt."[7] Here, CDT TN's statement was not spontaneous, but rather made in response to a specific question from LT CB. *See Jones*, 30 M.J. at 129-30 (noting that when statements are made "in response to a question" rather than "the product of impulse or instinct," such circumstances weigh against finding an excited utterance).

Lastly, the inconsistencies between CDT TN's in-court testimony and her statement to LT GC and LT CB undermine the reliability of her statement. *See Untied States v. Bowen*, 76 M.J. 83, 88 (C.A.A.F. 2017) ("a statement that qualifies for admission under a firmly rooted hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability") (citations and internal quotation marks omitted). Specifically, on direct examination, CDT TN testified she was texting with appellant and he came to her room. In contrast, LT GC and LT CB testified that CDT TN told them she saw appellant in the hallway in the barracks, and then they went to her room. Further, CDT TN testified that she froze during the sexual assault. Whereas, LT GC and LT CB testified CDT TN told them she tried to fight, but "[s]topped trying to fight because it hurt." These inconsistencies tend to show the exciting influence dissipated by the time CDT TN made the statement to LT GC and LT CB.

Under the aforementioned circumstances, we are not satisfied that CDT TN's statement to LT GC was spontaneous. Therefore, it was an abuse of discretion to admit the statement.

## B. Prejudice

Having found the military judge erred, we next determine whether appellant was prejudiced. "[A] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ, art. 59(a). We evaluate the harmlessness of an evidentiary ruling by weighing: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999).

---

[7] Lieutenant CB's testimony, to which defense counsel did not object, was that CDT TN stated appellant "raped" her. Cadet TN stated appellant was intoxicated and she tried to help him in the barracks so that he would not get in in trouble. "Once they got to her room, [appellant] proceeded to try to have sex with her." Cadet TN told LT CB she tried to fight appellant off and that appellant told her, "This is going to happen . . . . [W]e're going to have sex."

6

Applying the *Kerr* factors, we find the military judge's error in admitting CDT TN's statement to LT GC harmless. The government's case was strong while the defense case was weak. Appellant testified at trial and made significant admissions corroborating CDT TN's testimony. Specifically, appellant testified that his relationship with CDT TN had never been romantic. Appellant admitted that when he started poking CDT TN, she told him to go to sleep. Appellant testified that, while penetrating CDT TN's vagina, at one point he "[e]xited from her vagina, and [appellant] asked [CDT TN] to move in a different position." Appellant admitted that he was concerned with CDT TN's response telling him, "[j]ust go to sleep, Sheldon, it is bad enough already." Appellant testified he was confused and thought it was due to his sexual performance. When CDT TN left the room to go take a shower, appellant immediately texted his friends he just "clapped" someone in his company. Appellant texted one of his friends, "I don't know what [CDT TN] is complaining about. She got the good dick." Appellant also sent the following lengthy message to his friends:

> [CDT TN] said I could come to her room at [0100], so I went and [played] with her, then started rubbing her everything. At first, she said, 'Just go to sleep, Sheldon,' in a seductive way, but I stopped for a minute and then started rubbing her again, and she didn't say nothing or move me or away from me, so then I started fingering her, and she was just moaning and shit. Then I pulled her pants down and ate her out and fucked, and she enjoyed every fucking moment of it and said my name and grabbed my hand and shit.

Appellant's admissions supported CDT TN's testimony, particularly that she told him to go to sleep when he first started touching her and she did not say anything specifically indicating that she wanted to have sex. Though CDT TN's statement to LT GC was material, it was cumulative with LT CB's testimony to which there was no objection. We also find the quality of the statement low because CDT TN's statement to LT GC differed from her in trial testimony. Essentially, CDT TN's excited utterance to LT GC could be deemed helpful to the defense case. Accordingly, we find no prejudice to appellant by the military judge's admission of CDT TN's statement to LT GC.

## CONCLUSION

On consideration of the entire record, we hold the findings of guilty and the sentence, as approved by the convening authority, correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Judge RODRIGUEZ and Judge FLEMING concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court